UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JANEA L. GRANT,

                              Plaintiff,

        -against-                                                    5:05-CV-1138
                                                                     (LEK/DRH)

MICHAEL J. ASTRUE,[1] Commissioner of Social
Security,

                              Defendant.
_____

### DECISION AND ORDER

I.      BACKGROUND

     A.      Procedural History

        Plaintiff Janea L. Grant ("Plaintiff") filed applications for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") on July 1, 2003.  Administrative Transcript

("AT") 52-54, 206-08.  The applications were denied initially.  AT 40-46.  A request was made for a

hearing.  AT 47.  A hearing was held before an Administrative Law Judge ("ALJ") on June 14,

2004.  AT 223-76.  In a decision dated November 5, 2004, the ALJ found that Plaintiff is not

disabled.  AT 19-30.  The Appeals Council denied Plaintiff's request for review on August 12,

2005.  AT 5-8.  Plaintiff commenced this action on September 9, 2005 pursuant to 42 U.S.C. §

405(g), seeking review of the Commissioner's final decision.  Dkt. No. 1.

     B.      Contentions

        Plaintiff makes the following claims:

        (1) Plaintiff failed to make a knowing and voluntary waiver of her right to representation and

consequently suffered prejudice.  Dkt. No. 7 at 11-15.

_____

        [1]  Michael J. Astrue became Commissioner of Social Security on February 12, 2007.
Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the
Defendant in this suit.

(2) The residual functional capacity ("RFC") assessment is not supported by substantial

evidence and does not comply with Social Security Ruling ("SSR") 96-8p.  Dkt. No. 7 at 15-17.

(3) The vocational expert's testimony does not constitute substantial evidence.  Dkt. No. 7 at

18-20.

(4) The ALJ failed to fulfill his duty under SSR 00-4p to ensure that the vocational expert's

testimony was consistent with the Dictionary of Occupational Titles ("DOT").  Dkt. No. 7 at 20-21.

Defendant argues that the Commissioner's determination is supported by substantial

evidence in the record, and must be affirmed.  Dkt. No. 13.

**C.    Facts**

Plaintiff was twenty-six years old at the time of the hearing.  AT 229.  Plaintiff has her high

school degree and completed one semester of college.  AT 71, 268.  Plaintiff's past work experience

includes working as, *inter alia*, a toll collector and a retail store customer service worker.  AT 66.

Plaintiff alleges that she became unable to work on October 23, 2002.  AT 65.  She alleges disability

due to back problems, depression, a vitamin deficiency, foot problems, and a "body infection."  Id.

**1.    Treating Sources**

From January 27, 2003 to May 18, 2004, Plaintiff was treated on several occasions by

various physicians at Upstate Medical Center.  AT 149-62, 199-204.  She was treated for abdominal

pain, vitamin B12 deficiency, neuropathy, plantar fascitis, and depression.  Id.  Plaintiff was

prescribed various medications and stretching exercises, and received Vitamin B12 shots and heel

inserts.  Id.

While treating at Upstate Medical Center, Plaintiff saw Ambreen Qureshi, M.D. on several

occasions.  AT 149-52, 199-200.  In a "Physician's Statement for Determination of Employability"

form, which was completed by Dr. Qureshi on October 7, 2003, Dr. Qureshi indicated that Plaintiff

is unable to participate in "employment participation activities" due to depression and "back problems." AT 197-98. Dr. Qureshi also indicated that Plaintiff's impairment lasted or is expected to last for one year or more. AT 198. However, on May 18, 2004, Dr. Qureshi noted that Plaintiff "does not seem clinically depressed." AT 200.

From April 8, 2004 to May 11, 2004, Plaintiff saw Dr. James P. Walzer, a chiropractor,[2] with complaints of pain in the neck and back. AT 188-94. Dr. Walzer noted that Plaintiff showed decreased range of motion and subluxation. AT 188-91. Plaintiff's treatment consisted of "hydrocollator and adjustment." Id.

The record contains a note from Companion Chiropractic Health Center dated May 5, 2004. AT 195. The note states that Plaintiff was totally incapacitated from April 8, 2004 to May 12, 2005. Id. The note is signed by "JPW/LF." Id.

### 2.      Examining Sources

On October 3, 2003, Plaintiff underwent a consultative psychiatric examination by Jeanne Shapiro, Ph.D. AT 139-43. Dr. Shapiro diagnosed Plaintiff as suffering from depressive disorder not otherwise specified. AT 142. Dr. Shapiro noted that Plaintiff may have "some difficulty regularly attending to a routine and maintaining a schedule due to fatigue, lack of motivation, and lethargy." Id.

Also on October 3, 2003, Plaintiff underwent a consultative orthopedic examination by Amado Santos, M.D. AT 144-47. Dr. Santos found "no restrictions with physical activities except probably [a] mild restriction with prolonged sitting because of the low back pain or prolonged standing and walking because of her still[-]active plantar fascitis." AT 147. An x-ray of Plaintiff's lumbar sacral spine showed that the disc space at L5-S1 is narrowed. AT 146; see AT 148.

---

[2] Dr. Walzer's speciality is not stated clearly in his progress notes. However, Plaintiff stated that she received "chiropractic treatment" from Dr. Walzer. Dkt. No. 7 at 7.

### 3.    Non-Examining Sources

The record contains a Physical RFC Assessment Form completed by M. McNaughton, a disability analyst, on October 29, 2003.  AT 163-69; see AT 40.  The form indicates that Plaintiff is able to lift and carry fifty pounds occasionally; lift and carry twenty-five pounds frequently; stand and/or walk about six hours in an eight-hour workday; and sit about six hours in an eight-hour workday.  AT 164.

The record also contains a Psychiatric Review Technique form, which was completed by Carlos Gieseken, M.D., a review physician, on November 5, 2003.  AT 170-83.  Dr. Gieseken indicated that Plaintiff has a mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of deterioration.  AT 180.

Dr. Gieseken and M. McNaughton also completed a Mental RFC Assessment Form.  AT 184-86.  The form indicates that Plaintiff is limited moderately in several mental abilities.  AT 184-85.

The record also contains an undated statement from Suzanne Skibinski, P.T., indicating that Plaintiff has been undergoing aquatic therapy for her "injuries" and chronic back pain.  AT 196.  Ms. Skibinski noted that Plaintiff's treatment "is going to last more than a year, due to the severity of her knee and back pain."  Id.

## II.    DISCUSSION

### A.    Disability Standard

To be considered disabled, a plaintiff seeking DIB or SSI benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

4

be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is
> not only unable to do his previous work but cannot, considering his age, education,
> and work experience, engage in any other kind of substantial gainful work which
> exists in the national economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920

to evaluate claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in
> substantial gainful activity.  If he is not, the [Commissioner] next considers whether
> the claimant has a "severe impairment" which significantly limits his physical or
> mental ability to basic work activities.  If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical evidence, the claimant has an
> impairment which meets or equals the criteria of an impairment listed in Appendix 1
> of the regulations.  If the claimant has such an impairment, the [Commissioner] will
> consider him disabled without considering vocational factors such as age, education,
> and work experience; . . . .  Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's severe impairment,
> he has the residual functional capacity to perform his past work.  Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then determines
> whether there is other work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps.  However, if the

plaintiff establishes that his impairment prevents him from performing his past work, the burden

then shifts to the Commissioner to prove the final step.  Berry, 675 F.2d at 467 (citations omitted).

In this case, the ALJ found at step one that Plaintiff has not engaged in substantial gainful

activity since the alleged onset date.  AT 23.  At the second step, the ALJ determined that Plaintiff's

back pain and depression are severe impairments.  AT 26.  At the third step, the ALJ concluded that

those impairments neither met nor equaled any impairment listed in Appendix 1 of the regulations.

<u>Id.</u>  At the fourth step, the ALJ found that Plaintiff retains the RFC to perform a limited range of light work and then found that Plaintiff is unable to perform her past jobs.  AT 27.  At the fifth step, the ALJ considered the testimony of a vocational expert and concluded that Plaintiff is capable of performing work that exists in significant numbers in the national economy.  AT 29.  The ALJ therefore concluded that Plaintiff was not disabled.  <u>Id.</u>

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing, *inter alia*, <u>Johnson v. Bowen</u>, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  <u>Johnson</u>, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); <u>Rivera v. Sullivan</u>, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Williams on behalf of Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams, 859 F.2d at 258 (citations omitted).  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212 (1983).

## C.      Knowing and Voluntary Waiver of Representation

Plaintiff argues that she failed to receive adequate written or verbal notice of her right to have representation at the hearing.  Dkt. No. 7 at 11.  She claims that this lack of notice rendered her waiver ineffective and prejudiced her case.  Id.  Defendant argues that Plaintiff knowingly waived her right to a representative at the hearing and was not prejudiced.  Dkt. No. 13 at 17-21.

Claimants have a statutory right to notification of their options for obtaining legal representation in SSI and DIB claims.  42 U.S.C. §§ 406(c), 1383(d)(2)(B) ("The Commissioner of Social Security shall notify each claimant in writing, together with the notice to such claimant of an adverse determination, of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security.  Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge."); see also 20 C.F.R. §§ 404.1706, 416.1506 ("[W]e will include with the notice of that determination or decision information about your options for obtaining an attorney to represent you in dealing with us.  We will also tell you that a legal services organization may provide you with legal representation free of charge if you satisfy the qualifying requirements

7

applicable to that organization."). "Once a claimant is provided with adequate notice of his right to counsel, he may effectively waive the option to proceed with counsel in writing or orally before the judge." Vaughn v. Apfel, No. 98 Civ. 0025(HB), 1998 WL 856106, at *4 (S.D.N.Y. Dec. 10, 1998) (citing Frank v. Chater, 924 F. Supp. 416, 423 (E.D.N.Y. 1996)); see also Osorio v. Barnhart, No. 04 Civ. 7515 (DLC), 2006 WL 1464193, at *8 (S.D.N.Y. May 30, 2006).

Even if an ALJ does not sufficiently inform a plaintiff of his/her rights, the lack of counsel, in and of itself, is not a sufficient ground upon which remand or reversal may be based. Alvarez v. Bowen, 704 F. Supp. 49, 53 (S.D.N.Y. 1989). Plaintiff must show prejudice or unfairness in the proceeding. See Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987); Osorio, 2006 WL 1464193, at *9; and Colondres v. Barnhart, No. 04 Civ. 1841 (SAS), 2005 WL 106893, at *5 (S.D.N.Y. Jan. 18, 2005).

In this case, Plaintiff received several notices informing her of her right to representation. First, in the initial notice of denial of Plaintiff's application dated November 7, 2003, the notice states the following:

**If You Want Help With Your Appeal**

You can have a friend, lawyer, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay toward the fee. We do not withhold money from SSI benefits to pay your lawyer.

AT 43 (emphasis in original). The letter then provides a toll free telephone number for Plaintiff to call with any questions, as well as the telephone number and address of the local Social Security office. AT 44.

Second, in the form requesting a hearing by an ALJ, the following statement is printed: "I understand I have a right to be represented at the hearing." AT 47. Plaintiff signed the request and dated it November 13, 2003. Id.

Third, the record includes a May 5, 2004 Notice of Hearing letter from the ALJ to Plaintiff. AT 34-38. The letter advises Plaintiff of the following:

**You May Choose To Have a Person Represent You**

If you want to have a representative, please get one right away. You should show this notice to anyone you may appoint. You or that person should also call this office to give us his or her name, address, and telephone number.

AT 35 (emphasis in original).

Fourth, the record contains a second letter dated May 5, 2004 from the ALJ to Plaintiff. AT 39. The letter advises Plaintiff of the following:

Your file indicated that legal counsel does not represent you. We are enclosing our leaflet, "Social Security and Your Right to Representation." The information provided in this leaflet could assist you in obtaining representation if you so desire.

Id.

Fifth, the following exchange took place at the hearing:

ALJ:          The first thing I want to discuss with you is you know you have the right to have an attorney or another person help you with your case.

Plaintiff:    Uh-huh.

ALJ:          But you want to go ahead and proceed today without representation?

Plaintiff:    Uh-huh.

ALJ:          All right. You'll have to say yes or no.

Plaintiff:    Yes.

AT 225.

Based on the foregoing, the Court finds that Plaintiff received adequate notice of the right to

9

representation.  Plaintiff was provided with numerous written notices of her right to representation and a leaflet regarding the right to representation, and was informed of the right in person at the hearing.  Also, Plaintiff signed the Request for a Hearing form that indicates that she understood her right to representation.  AT 47.  Moreover, Plaintiff knowingly and voluntarily waived this right based on the statements she made at the hearing.  AT 47; see Vaughn, at 1998 WL 856106, at *4 ("Once a claimant is provided with adequate notice of his right to counsel, he may effectively waive the option to proceed with counsel . . . orally before the judge.").  Therefore this claim is unavailing.

### D.    Duty to Develop Record

Plaintiff argues that the ALJ's "inquiry into the relevant facts was less than scrupulous and conscientious."  Dkt. No. 7 at 15.  Defendant argues that the ALJ "complied with his duty to develop [P]laintiff's claim and to provide her with a full and fair hearing."  Dkt. No. 13 at 21.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (citing Echevarria v. Sec'y of HHS, 685 F.2d 751, 755 (2d Cir. 1982)).  This duty is heightened when a claimant appears *pro se*.  See Devora v. Barnhart, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002) (citing Cullinane v. Sec'y of HHS, 728 F.2d 137, 139 (2d Cir. 1984) (finding that remand for new hearing was appropriate where ALJ failed to assist pro se litigant in securing all relevant medical testimony)).  The regulations describe this duty by stating that, "[b]efore we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources . . . ."  20 C.F.R. §§ 404.1512(d), 416.912(d).  The duty of an ALJ to develop the record is "particularly important" when obtaining information from a claimant's treating physician due to the "treating physician" provisions in the regulations.  Devora, 205 F. Supp. 2d at 172.  The regulations

thus provide that, "[w]hen the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled, . . . [w]e will first recontact your treating physician . . . to determine whether the additional information we need is readily available."  20 C.F.R. §§ 404.1512(e), 416.912(e).

Here, the ALJ had a heightened duty to develop the record in light of Plaintiff's *pro se* status.  See Devora, 205 F. Supp. 2d at 172 (citations omitted).

### 1.      Plaintiff's Therapist

Plaintiff argues that the ALJ erred by failing to obtain records from her therapist.  Dkt. No. 7 at 14.  Defendant argues that the ALJ attempted to obtain records from Plaintiff's therapist, but was unable to do so "possibly because [P]laintiff saw a different therapist than the one she identified to the ALJ."  Dkt. No. 13 at 20.

First, the record contains a form dated April 20, 2004 in which Plaintiff indicated that she was treated or examined by "Dr. Judy Gibson" on April 14, 2004.  AT 128.  The record also shows that an "Information Request" was sent to Dr. Gibson, requesting all clinic notes from 2004 to the present.  AT 131.  The record contains no response.

Second, at the hearing, the ALJ asked Plaintiff if she had any objections to the exhibits.  AT 228.  Plaintiff responded, "Only one.  It say from Judy Gibson, which [was] supposed to have been my therapist, I never had her.  My therapist's name is Pamela but they work at the same place."  AT 228.  Plaintiff explained, "I had [an] appointment and it kept getting rescheduled so when I actually had to go in, they gave me another therapist because she wouldn't see me . . . . So her name was Pamela.  I don't know her last name."  AT 228-29.  Plaintiff later clarified that she saw Dr. Gibson on one occasion and Pamela on two occasions, but has been unable to see Pamela again because of a conflict with other appointments.  AT 228-29, 251.

The pertinent regulation provides, "[w]e will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports."  20 C.F.R. § 404.1512(d).  "Every reasonable effort" means that "we will make an initial request for evidence from your medical source and, at any time between 10 and 20 calendar days after the initial request, *if the evidence has not been received, we will make one followup request to obtain the medical evidence necessary to make a determination*."  20 C.F.R. § 404.1512(d)(1) (emphasis added).

Regarding Dr. Gibson, an attempt was made to obtain records from this source.  However, no followup request was made to Dr. Gibson.  Accordingly, the ALJ erred by failing to submit a followup request to Dr. Gibson.

Regarding Pamela, the record provides no indication that an attempt was made to obtain records from this source.  Accordingly, the ALJ erred by failing to contact Pamela for treatment records.[3]

The omission of records from Dr. Gibson and Pamela is striking considering that Plaintiff claims disability due to in part to depression, which was found to be a severe impairment by the ALJ.  See AT 26, 65.  Moreover, Plaintiff's testimony contradicts the ALJ's discussion of her credibility in which he stated that Plaintiff "does not see any mental health professionals."  AT 27. Accordingly, the matter must be remanded in order for the ALJ to make every reasonable effort to obtain records from Dr. Gibson and Pamela.

### 2.      Plaintiff's Treating Sources

Plaintiff argues that the ALJ erred by failing to obtain an opinion from her treating sources as to her limitations.  Dkt. No. 7 at 14.  Plaintiff fails to state to which specific sources she refers.

---

[3]  Although Plaintiff was unaware of Pamela's last name, she stated that Pamela worked at the "same place" as Dr. Gibson.  AT 228.

However, Plaintiff identified Dr. Qureshi as her "primary care physician" and noted that she

received "chiropractic treatment" from Dr. Walzer.  Dkt. No. 7 at 5, 7.  Defendant argues that the

record already contains the opinions of Dr. Qureshi and Dr. Walzer.  Dkt. No. 13 at 13.

> The relevant regulation provides as follows:
>
> *We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved*, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source.

20 C.F.R. § 404.1512(e) (emphasis added).  "Medical sources" refers to acceptable medical sources,

or other health care providers who are not acceptable medical sources.[4]  20 C.F.R. § 404.1502.

As noted, Dr. Qureshi completed a "Physician's Statement for Determination of

Employability" form in which it is indicated that Plaintiff is unable to participate in "employment

participation activities" due to depression and "back problems."  AT 197-98.  Dr. Qureshi also

indicated that Plaintiff's impairment lasted or is expected to last for one year or more, and suggested

that the "employment exemption and activity limitation" is expected to end on October 16, 2004.

AT 198.  However, Dr. Qureshi opined on May 18, 2004 that Plaintiff "does not seem clinically

depressed."  AT 200.  Due to the conflicting opinions, the ALJ should have sought clarification

from Dr. Qureshi.  Accordingly, the matter must be remanded for clarification of Dr. Qureshi's

opinion.

Regarding Dr. Walzer, the record contains a May 5, 2004 note that indicates that Plaintiff is

---

[4] Acceptable medical sources include: (1) Licensed physicians (medical or osteopathic doctors); (2) Licensed or certified psychologists; (3) Licensed optometrists; (4) Licensed podiatrists; and (5) Qualified speech-language pathologists.  20 C.F.R. § 404.1513(a).

totally incapacitated.  AT 195.  It is unclear whether the note is from Dr. Walzer.  See AT 195.

Accordingly, the ALJ should have clarified the identity of the author(s) of this note.  Therefore the

matter must be remanded for a clarification of this note.

### 3. Intelligence Evaluation

Plaintiff argues that the ALJ erred by failing to "follow up with an intelligence evaluation

where the consultative examiner indicated [that Plaintiff] may be in the borderline range of

intellectual functioning."  Dkt. No. 7 at 14.  Defendant argues that no intelligence evaluation is

necessary.  Dkt. No. 13 at 21.

As noted, Dr. Shapiro indicated that borderline intellectual functioning should be ruled out.

AT 142.  However, Plaintiff points to no other evidence suggesting a cognitive impairment.

Moreover, she alleged no cognitive impairment as a basis for disability.  See AT 65.  Further,

Plaintiff indicated that she graduated from high school where she attended regular classes, and

completed one semester of college and specialized nurses' aide training.  AT 71, 233-34.  In light of

the foregoing, this claim is unavailing.

### E. RFC

RFC describes what a claimant is capable of doing despite his or her impairments

considering all relevant evidence, which consists of physical limitations, symptoms, and other

limitations which go beyond the symptoms.  Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y.

1999) (Hurd, D.J.); see 20 C.F.R. §§ 404.1545, 416.945.  "RFC can only be established when there

is substantial evidence of each physical requirement listed in the regulations."  Smith v. Apfel, 69 F.

Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted).  In assessing RFC, the ALJ must make

findings specifying what functions the claimant is capable of performing, not simply make

conclusory statements regarding a claimant's capabilities.  Martone, 70 F. Supp. 2d at 150.  RFC is

then used to determine whether the claimant can perform his or her past relevant work in the national economy.  New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. §§ 404.1560, 416.960.

### 1.    Narrative Discussion

Plaintiff argues that the ALJ erred by failing to provide a function-by-function analysis of Plaintiff's abilities as required by SSR 96-8p.  Dkt. No. 7 at 17.  SSR 96-8p provides that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  SSR 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996).  In this case, the ALJ reviewed the medical evidence, discussed Plaintiff's credibility, and summarily concluded that Plaintiff is capable of performing a limited range of light work.  AT 22-27.  Nevertheless, the ALJ failed to include a narrative discussion describing how the evidence supports each conclusion.  Therefore, the matter must be remanded.

### 2.    Mental Limitations

Plaintiff also argues that the RFC determination did not encompass the mental limitations that were indicated in the Mental RFC Assessment that was completed by M. McNaughton and Dr. Gieseken.  See AT 184-86.  Defendant argues, "Dr. Gieseken's overall RFC is, in fact, covered by the mental limitations the ALJ imposed."  Dkt. No. 13 at 12.

Under the regulations, the ALJ is required to "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us."  20 C.F.R. § 404.1527(f)(2)(ii).

In his decision, the ALJ reviewed the assessment in question and stated that he "agrees with

Dr. Gieseken's opinion that [Plaintiff's] mental impairment did not preclude all work-related activities." AT 26.  While the ALJ stated that he "agree[d]" with Dr. Gieseken's opinion, the ALJ failed to state the weight he assigned to this opinion.  Moreover, the significance placed on Dr. Gieseken's opinion is unclear, as Dr. Gieseken found that Plaintiff is limited moderately in several areas of functioning, AT 184-85, yet the ALJ failed to discuss these findings or include all of the limitations in the RFC determination.  Therefore, the matter must be remanded based on the ALJ's failure to explain the weight given to Dr. Gieseken's opinion.

### F.    Vocational Expert

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing.  See Curry, 209 F.3d at 122; 20 C.F.R. §§ 404.1560(c), 416.960(c).  "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country." 20 C.F.R. §§ 404.1566(a), 416.966(a).  The ALJ may apply the grids or consult a vocational expert. See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2.

The vocational expert may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given his functional limitations.  See Colon v. Comm'r of Soc. Sec., No. 6:00-CV-0556, 2004 WL 1144059, at *6 (N.D.N.Y. Mar. 22, 2004) (Sharpe, J.).  A vocational expert's testimony is useful only if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job.  See Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir.1984) (citation omitted).  The ALJ is responsible for determining the claimant's capabilities based on all the evidence, and the hypothetical questions

must present the full extent of the claimant's impairments to provide a sound basis for the vocational expert's testimony.  Colon, 2004 WL 1144059, at *6.  However, there must be "'substantial record evidence to support the assumption upon which the vocational expert based his opinion.'"  Id. (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983)).

Plaintiff argues that the RFC contained in the hypothetical questions posed to the vocational expert, Julie Andrews, fails to mirror the RFC finding in the decision.  Dkt. No. 7 at 18-20.  Specifically, Plaintiff points out that the ALJ failed to include the following limitation in the hypothetical questions posed to the vocational expert: No contact with the general public and minimum contact with co-workers.  Id. at 18.  Defendant argues that the RFC in the hypothetical questions mirrors the RFC finding in the decision.  Dkt. No. 13 at 15.

In his decision, the ALJ stated that he "asked the vocational expert whether jobs exist in the national economy for an individual of the claimant's age, education, past relevant work experience and residual functional capacity as determined."  AT 29.  However, the VE's testimony was based on an RFC that is different than the RFC as stated in the decision.  The VE based her testimony on a hypothetical person who could have "occasional contact with coworkers and the general public."  AT 274.  In his decision, the ALJ stated that Plaintiff retained the RFC to perform work that, *inter alia,* "*should not* involve[] contact with the general public and have *minimum* contact with co-workers."  AT 27 (emphasis added).  Therefore, the hypothetical questions failed to accurately reflect the limitations contained in the RFC determination.  Colon, 2004 WL 1144059, at *6.  Accordingly, the matter must be remanded.

### G.      Social Security Ruling 00-4p

Plaintiff argues that the ALJ failed to asked the VE whether her testimony was consistent with the DOT, as required by SSR 00-4p.  Dkt. No. 7 at 20.  Defendant claims that there was no

need to "explore inconsistencies" between the VE's testimony and the DOT because the VE relied on the DOT.  Dkt. No. 13 at 16.

SSR 00-4p requires that when a VE or vocational specialist ("VS") provides evidence about the requirements of a job or occupation, the ALJ has an affirmative responsibility to ask about any possible conflict between that vocational expert evidence and information provided in the DOT. SSR 00-4p, 2000 WL 1898704, at *4 (SSA Dec. 4, 2000).  In these situations, the ALJ is directed to do the following:

> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

Id.

In this case, the ALJ asked the VE to "describe the [past] jobs the Claimant has from the standpoint of the [DOT]."  AT 269.  The VE described Plaintiff's past relevant work, referencing various positions in the DOT.  AT 270-72.  The ALJ then posed hypothetical questions to the VE to which the VE responded by citing several positions in the DOT.  AT 272-75.

While the ALJ failed to specifically ask the VE if the evidence she provided conflicts with information provided in the DOT, the VE cited only jobs listed in the DOT.  Moreover, Plaintiff fails to suggest any inconsistency between the VE's testimony and the DOT.  Plaintiff simply points out that the VE failed to ask whether the testimony conflicts with the DOT.

On remand, should the testimony of a VE or VS be elicited, the adjudicator should ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and if the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

IV.     **CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g)[5] for further proceedings consistent with the above; and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**; and it is further

**ORDERED**, that the Clerk serve a copy of this order on all parties.

**IT IS SO ORDERED.**

DATED:          July 31, 2008
                Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

---

[5] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

19